IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

GLORIA JANE MILLER,                    *

     Plaintiff,                       *

vs.                                    *

                                     CASE NO.3:14-CV-45 (CDL)

ADVANTAGE BEHAVIORAL HEALTH           *
SYSTEMS,
                             *

     Defendant.

---

O R D E R

     Plaintiff Gloria Jane Miller alleges that Defendant Advantage Behavioral Health Systems terminated her employment because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA). Advantage seeks dismissal of this action based on lack of subject matter jurisdiction, contending that it is an arm of the state of Georgia and thus entitled to immunity under the Eleventh Amendment to the United States Constitution. For the reasons explained in the remainder of this Order, the Court finds that Advantage is not an arm of the state for Eleventh Amendment purposes, and therefore, its motion to dismiss (ECF No. 34) is denied.[1]

---

[1] Advantage relies on evidence beyond Miller's complaint. Although the Court's decision is based on the factual record, the Court notes that the facts upon which the Court's decision is based are not in dispute.

BACKGROUND

The relevant facts, which are largely undisputed, are as follows:

Advantage is a community service board that receives funding from the state of Georgia to provide mental health, substance abuse, and developmental disabilities services at clinics throughout Georgia.  Georgia law creates community service boards and describes them as "public" entities.  *See generally* O.C.G.A. § 37-2-6.

Miller's relevant employment with Advantage began as a part-time nurse in 2002.  Shortly thereafter, Miller became a full-time employee.  Miller contends that Advantage discriminated against her because of her age.  She alleges that Advantage intentionally placed her in a situation where she could not succeed at her job to set her up for termination.  After compiling a record of performance deficiencies against Miller, Advantage terminated her employment in January 2010.

In May 2014, Miller filed the present action.  In its answer, Advantage asserted that Miller's "claims may be barred by Eleventh Amendment immunity and/or sovereign immunity."  Def.'s Answer 2, ECF No. 4.  Advantage also disputed the merits of Miller's claims.  In response to Miller's first set of interrogatories, Advantage again stated that it was immune from

suit and disputed the merits of Miller's claims.  Def.'s Suppl.
Br. in Supp. of Mot. to Dismiss Ex. A, at 8-9, ECF No. 47-1.

Although it timely raised lack of subject matter
jurisdiction based on Eleventh Amendment immunity in its
pleadings and during discovery, Advantage inexplicably failed to
promptly file a motion to dismiss based upon this defense.
Instead, the parties engaged in nearly a year of discovery on
the merits of the age-based discrimination claim.  At the close
of discovery, Advantage filed a motion for summary judgment on
that claim, but even more perplexing still did not file a motion
based on its Eleventh Amendment defense.  *See generally* Def.'s
Mem. in Supp. of Summ. J., ECF No. 14-1.  After spending
substantial time reviewing the detailed factual record, the
Court found that a genuine factual dispute existed as to whether
Advantage terminated Miller because of her age. Order Den. Mot.
for Summ. J., ECF No. 30.  After denying Advantage's motion for
summary judgment, the Court scheduled the final pretrial
conference in anticipation of a jury trial.

A week before the scheduled final pretrial conference, it
apparently dawned on Advantage that it had not moved to dismiss
the action based on Eleventh Amendment immunity, and it filed
its tardy motion.  ECF No. 34.  Concluding that any ruling on
the motion would likely be subject to interlocutory appellate

review, the Court reluctantly continued the pretrial conference
and jury trial in order to decide the late-filed motion.

DISCUSSION

I.   **Waiver of Eleventh Amendment Immunity**

Miller argues that by delaying the filing of its motion
until the eve of trial and in violation of the Court's
scheduling order, Advantage waived its Eleventh Amendment
immunity defense.  The Court is naturally sympathetic to this
argument.  Advantage's conduct wasted judicial resources and
arguably violated the Court's scheduling order.  Nevertheless,
"[t]he test to determine whether a state has waived its
sovereign immunity 'is a stringent one.'"  *Barnes v. Zaccari*,
669 F.3d 1295, 1308 (11th Cir. 2012)(quoting *Coll. Sav. Bank v.
Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675
(1999)).  Accordingly, the Court finds it prudent to address the
merits of Advantage's Eleventh Amendment immunity defense.

II.  **Eleventh Amendment Immunity**

"The Eleventh Amendment protects a State from being sued in
federal court without the State's consent."  *Manders v. Lee*, 338
F.3d 1304, 1309 (11th Cir. 2003)(en banc).  This protection not
only applies to actions directly against the state itself but
includes actions against "arms of the state."  *Id.*  It has been
observed that "the jurisdictional bar embodied in the Eleventh
Amendment is a 'rather peculiar kind of jurisdictional issue.'"

*McClendon v. Ga. Dep't of Comty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001)(quoting *United States v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 892 (D.C. Cir. 1999)). "[T]he Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so." *Id.* (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)). The entity invoking Eleventh Amendment immunity "bears the burden of demonstrating that it qualifie[s] as an arm of the state entitled to share in its immunity." *Haven v. Bd. of Trs. of Three Rivers Reg'l Library Sys.*, No. 15-11064, 2015 WL 5040174, (11th Cir. Aug. 27, 2015)(per curiam)(quoting *Woods v. Rondout Valley Ctr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006)); *see Misener Marine Constr., Inc. v. Ga. Ports Auth.*, 199 F. App'x 899, 900 (11th Cir. 2006)(per curiam)(upholding the district court's determination that the defendant "failed to satisfy its burden of establishing Eleventh Amendment immunity"); *see also Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)(noting that every circuit to address the issue has concluded that the defendant bears the burden of demonstrating that it is entitled to Eleventh Amendment immunity).

The central issue presented by Advantage's motion is whether Advantage is an "arm of the state" for Eleventh Amendment purposes. To help define whether a public entity is

an "arm of the state," courts have distinguished between entities that constitute "arms of the state" and entities that constitute political subdivisions of the state. The latter, which includes counties, municipal corporations, or similar political subdivisions of the state, typically do not enjoy Eleventh Amendment immunity. *See Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 768 (11th Cir. 2014). Thus, to determine whether a state-law public entity like Advantage is entitled to Eleventh Amendment immunity, the Court considers whether Advantage "should be treated as an 'arm of the State' of Georgia, or as a county or similar political subdivision." *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

This determination must be "made 'in light of the particular function in which [Advantage] was engaged when taking the actions out of which liability is asserted to arise.'" *Id.* (quoting *Manders*, 338 F.3d at 1308). Here, Advantage's potential liability arises from its decision to terminate Miller's employment. The Court therefore analyzes Advantage's claim of Eleventh Amendment immunity in light of Advantage's function as an employer. Specifically, the Court must determine

whether the present record establishes that Advantage acts as an "arm of the state" when it terminates employees like Miller.[2]

Four factors guide the Court's analysis: (1) how state law defines community service boards; (2) what degree of control the state maintains over the community service board; (3) where the community service board derives its funds; and (4) who is responsible for judgments against the community service board. *Manders*, 338 F.3d at 1309.  Based on the present record, Advantage has failed to establish that any of these *Manders* factors weigh in favor of granting Eleventh Amendment immunity.

A.   Georgia Law Defining Community Service Boards

Georgia law establishes community service boards as part of a legislative policy "to provide adequate mental health, developmental disability, addictive disease, and other disability services to all its citizens."  O.C.G.A. § 37-2-1(b). The applicable statute provides that "[e]ach community service board shall be a public corporation and an instrumentality of the state . . . ."  O.C.G.A. § 37-2-6(a).  But the legislative record, as indicated by provisions the Georgia legislature enacted, supports the conclusion that the legislature did not

---

[2] Advantage argues that it fired Miller due to her failure to complete state required Multi-Information Consumer Profiles.  Thus, Advantage contends that the relevant function for determining Eleventh Amendment immunity is its compliance with the state mandated Profiles.  Def.'s Supp. Br. in Supp. of Mot. to Dismiss 5-6, ECF No. 47.  This argument is meritless because Advantage's potential liability does not arise from its compliance with the state requirements.  It arises from the fact that it terminated Miller.

intend for community service boards to be "arms of the state." The legislature expressly provided:

> The community service boards shall be public bodies but *shall not be considered agencies of the state* or any specific county or municipality. Such community service boards are public agencies in their own right and *shall have the same immunity as provided for counties*.

O.C.G.A. § 37-2-11.1(c)(1)(emphasis added).

If this provision were the entire record on the issue of how Georgia law treats community service boards, this first factor for determining whether such boards are entitled to Eleventh Amendment immunity would decisively tilt the scales against finding immunity. But the issue is more complicated. The Georgia Supreme Court has ruled that the legislature's attempt to statutorily define community service boards as having the state-law immunity of counties conflicts with the Georgia Constitution. *Youngblood v. Gwinnett Rockdale Newton Comty. Serv. Bd.*, 273 Ga. 715, 716, 545 S.E.2d 875, 877 (2001). The Georgia Supreme Court, therefore, disregarded the legislature's attempt and held that community service boards are "state department[s] or agenc[ies]" entitled to state-law sovereign immunity. *Id.* This holding arguably conflicts with the legislature's intent, but it is not inconsistent with a finding that these community service boards are not entitled to *federal Eleventh Amendment immunity.*

In *Youngblood*, the Georgia Supreme Court held that O.C.G.A. § 37-2-11.1(c)(1) is unconstitutional under the Georgia Constitution. *Youngblood*, 273 Ga. at 715-16, 545 S.E.2d at 876-77. The court reasoned that community service boards function as "state agencies" under Georgia law. *Id.* at 716, 545 S.E.2d at 877. Thus, it violates the Georgia Constitution for the General Assembly to equate them with counties for state immunity purposes. *Id.* at 715-16, 545 S.E.2d at 876-77. But the Georgia Supreme Court has recognized that not all "state agencies," which enjoy state-law sovereign immunity, are "arms of the state" for Eleventh Amendment immunity. *See Hines v. Ga. Ports Auth.*, 278 Ga. 631, 636-37, 604 S.E.2d 189, 194-95 (2004)("A state court decision that an organization is an 'agency' of the state for purposes of state-conferred immunity is different from a determination under federal law as to whether an organization is an 'arm of the state' for Eleventh Amendment purposes."). Particularly relevant here is the distinction between Georgia state-law immunity and Eleventh Amendment immunity regarding political subdivisions of the state: Georgia considers political subdivisions "state agencies" entitled to state-law immunity, but federal Eleventh Amendment immunity does not protect political subdivisions of the state. *See Lightfoot*, 771 F.3d at 770 & 778 (noting that "Georgia . . . extends immunity to counties, which are clearly not immune under the Eleventh

Amendment" and holding that Georgia school districts are not entitled to Eleventh Amendment immunity, even though they are entitled to Georgia state-law immunity). Thus, Georgia law's classification of community service boards as "state agencies" does not indicate whether Georgia considers community service boards "arms of the state" or political subdivisions.

Georgia's statutory governance scheme also suggests that community service boards share more characteristics with political subdivisions than with entities that are treated as "arms of the state." For example, community service boards are governed by governing boards whose members are appointed by the county authorities in the area the community service board serves, not by state officials. *See* O.C.G.A. § 37-2-6(b); *cf. United States ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 603 (11th Cir. 2014)(holding that the water management district functioned as an "arm of the state" where the state, through a board appointed by the Governor, directly governed the water management district). Georgia's delegation of authority over community service boards to local political bodies indicates that Georgia created community service boards to function as political subdivisions, which are not entitled to Eleventh Amendment immunity. *See Lightfoot*, 771 F.3d at 771 ("[T]he Eleventh Amendment shields an entity . . . only when it is . . . the direct means by which the State acts . . . ."

(alterations in original)(quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 313 (1990)(Brennan, J., concurring in part and concurring in the judgment))).

The Court also observes that the Georgia Supreme Court in *Youngblood* did not hold that community service boards were entitled to Eleventh Amendment immunity.  And other district court decisions since *Youngblood* have not found that decision to be an obstacle to finding that community service boards are not "arms of the state" for Eleventh Amendment immunity.  *See Johnson v. Ogeechee Behavioral Health Servs.*, 479 F. Supp. 2d 1357, 1362-66 (S.D. Ga. 2007); *Peery v. Serenity Behavioral Health Sys.*, No. CV106-172, 2009 WL 1228446 (S.D. Ga. May 4, 2009); *see also Lightfoot*, 771 F.3d at 771 ("[I]t is federal law, not state law, that ultimately governs whether an entity is immune under the Eleventh Amendment.").

Considering the entire body of law regarding how Georgia defines its community service boards, the Court concludes that they are not deemed to be "arms of the state" but are more closely akin to political subdivisions.  Thus, this factor should weigh against a finding that Advantage is entitled to Eleventh Amendment immunity based on the present record.  But even giving Advantage the benefit of the doubt that the law is somewhat unclear on this point, this factor is at best inconclusive and thus neutral in the Court's evaluation.

B.   Where Georgia Law Vests Control

The Court next examines where state law vests control over the community service board.  *Manders*, 338 F.3d at 1320.  The record establishes that community service boards, under the authority of their governing boards, maintain substantial independence from state control.  Specifically, Advantage offers no evidence that the state exercises control over Advantage's employment termination decisions.  And the Court finds Advantage's argument that the state exercises *general* control over Advantage unpersuasive.  Thus, as explained more thoroughly below, the Court concludes that the control factor weighs heavily against granting Eleventh Amendment immunity.

1.   *Community Service Board and Governing Board Autonomy*

Under Georgia law, community service boards are subject to the control of governing boards whose members are appointed by the county authorities of the area that the community service board serves.  O.C.G.A. § 37-2-6(b).  The governing boards have the authority to delegate "any power, authority, duty, or function" to the community service board executive director or staff.  O.C.G.A. § 37-2-6.1(a)(1).  Thus, community service boards operate primarily under local control or autonomously.

For example, the community service board's relationship with the state is a voluntary contractual relationship.  *See*

O.C.G.A. § 37-2-6(a)("[C]ommunity service boards may enroll and contract with the [Department of Behavioral Health and Developmental Disabilities] . . . ."). Community service boards may change or end this contractual relationship by converting to a private nonprofit, a unit of the county government, a component part of a hospital authority, or ceasing operations without state approval. *See* O.C.G.A. § 37-2-6.4(a)(indicating that the community service board may convert with the approval of their governing board and county authorities only); O.C.G.A. § 37-2-6.5(a)(indicating that the community service board may cease operations by a joint act of the community service board, the governing board, and the county authorities in the area the community service board serves).

Additionally, Georgia law grants community service boards, under the authority of their governing boards, the power to: make and enter contracts; acquire, sell, convey, lease, or otherwise dispose of real and personal property; fix employee compensation; receive and administer grants and gifts; establish fees; accept appropriations and loans; establish a seal; and incur debts. O.C.G.A § 37-2-6.1(b). This broad grant of authority demonstrates the state's lack of direct control over community service boards. *See Lightfoot*, 771 F.3d at 772 (considering the fact that "school board may purchase property, borrow money, enter contracts, and issue bonds" as evidence of

the school districts' "substantial autonomy over their affairs").

   2.   *Advantage Fails to Establish that the State Controls Its Employment Termination Decisions*

Community service boards also retain autonomy over their employment practices. For example, community service boards may choose whether and how to provide employee benefits. *See* O.C.G.A. § 37-2-6.1(b)(7)(stating that the community service board "may provide" certain employee benefits). Georgia law expressly provides that employees working for the community service board are "community service board employees," not state employees. O.C.G.A. § 37-2-11.1(c)(1).

Regarding employment termination, Advantage claims that community service board employees are "deemed to be state employees" for the purposes of the state of Georgia merit system. Def.'s Mem. in Supp. of Mot. to Dismiss 7, ECF No. 34-1. Advantage also notes that "classified employees" under the state merit system are "employed and dismissed in accordance with the rules and regulations of the State Personnel Board." O.C.G.A. § 37-2-6.2(a)(2). Advantage, however, does not point to evidence that Miller was covered by the state merit system. Additionally, Georgia law indicates that, even if Miller was covered by the state merit system, she was not a "classified employee." Thus, the Court finds that Advantage fails to show

that the state controls Advantage's termination of employees like Miller.

In support of its contention that Miller was covered by the state merit system, Advantage cites O.C.G.A. § 37-2-6.2 and *Youngblood*'s citation of O.C.G.A. § 37-2-6.2(a)(2) and O.C.G.A. § 37-2-6.1(b)(7). Def.'s Mem. in Supp. of Mot. to Dismiss 7, ECF No. 34-1; Def.'s Supp. Br. in Supp. of Mot. to Dismiss 7, ECF No. 47. None of these provisions support Advantage's argument.

First, O.C.G.A. § 37-2-6.2 governs state employees who were transferred to community service boards in 1994 and instructs that they "shall retain all existing rights under [the rules of the State Personnel Board]." O.C.G.A. § 37-2-6.2(a). Nothing in the record indicates that Miller transferred from state employment to Advantage in 1994. Thus, O.C.G.A. § 37-2-6.2 is irrelevant to Advantage's employment of Miller.

Second, the current version of O.C.G.A. § 37-2-6.1(b)(7) says nothing about the state merit system.[3] In 2001, when *Youngblood* was decided, a former version of O.C.G.A. § 37-2-6.1(b)(7) expressly included community service board employees in the state personnel merit system:

---

[3] The provision currently states that community service boards "may provide, either independently or through contract with appropriate state or local government entities" certain employee benefits. O.C.G.A. § 37-2-6.1(b)(7).

> Each community service board shall comply with the provisions of Chapter 20 of Title 45, relating to the state personnel administration, and each employee of such board shall be a covered employee . . . , subject to the rules and regulations of the state merit system.

O.C.G.A. § 37-2-6.1(7)(2003).

Today, however, the provision governing whether community service board employees are subject to the state merit system is found at O.C.G.A. § 37-2-6.1(b)(9) which states:

> Each community service board *shall establish and maintain a personnel program* for its employees and fix the compensation and terms of compensation of its employees; provided however, that each community service board shall comply with the provisions of [the code chapter governing state personnel administration], for so long as and to the extent that each employee of such board remains subject to the rules and regulations of the State Personnel Board.

O.C.G.A. § 37-2-6.1(b)(9)(emphasis added).

In fact, the express inclusion of community service board employees in the state merit system has not been a part of the statute since July 2006. *See* O.C.G.A. § 37-2-6.1(7)(July 1, 2006). Thus, Advantage's citations are irrelevant, outdated, and do not support its claim that Miller was covered by the state merit system. Considering the statutory amendment, Miller may have been covered by the state merit system when she was initially employed in 2002, but the statutory revision in 2006 indicates that her coverage may have been phased out.

Even if the Court assumes that Miller "remain[ed] subject to the rules and regulations of the State Personnel Board" under

16

the current statute, O.C.G.A. § 37-2-6.1(b)(9), that alone is insufficient to show that the state exercises control over Advantage's termination of employees like Miller.   Under the state merit system, only "classified employees" are subject to special termination procedures.   *See* O.C.G.A. § 45-20-2(13) & (14); *see also* Att'y Gen. Op. No. 20-03-2, Employees of Community Service Boards Hired After July 1, 1996 Are Not in the Classified Service of the State Merit System, 2003 WL 136235, at *1 (Jan. 10, 2003)("[T]he most significant distinguishing factor between employees in the classified and unclassified service is that only employees in the classified service are provided a formal statutory review process . . . upon dismissal . . . ."). And, under Georgia law, no employee hired after 1996 is a "classified employee."   O.C.G.A. § 45-20-2(2); Att'y Gen. Opinion No. 03-2, at *3.[4]   Here, Miller's relevant tenure with Advantage began in 2002 and, therefore, she was not a "classified employee."   Thus, even if the Court assumes that Miller's state merit system coverage was not phased out, Miller was at most an "unclassified" employee" employed "at will."   *See* O.C.G.A. § 45-20-2(13) & (14).

Advantage fails to offer any evidence that the state exercises control over termination decisions for "at will"

---

[4] This Georgia Attorney General Opinion relies on the former version of O.C.G.A. § 37-2-6.1(b)(7).

employees.   Additionally,  the  record  does  not  indicate  that
Advantage  complied  with  state  procedures  when  it  terminated
Miller.   Advantage  has  simply  failed  to  establish  that  the  state
exercises  control  of  Advantage's  termination  of  employees  like
Miller.

　　　　　3.　　State Control of Advantage's Operations Generally

In  its  initial  brief,  Advantage  argued  that  the  state
exercises  control  over  Advantage's  operations  *generally.*  As  the
previous  discussion  has  established,  the  present  record  does  not
support  this  conclusory  allegation.   Advantage's  reliance  upon
O.C.G.A.  §  37-2-6.1(d)  is  misplaced.   Although  this  provision
declares  that  community  service  board  property  is  public
property  and  thus  not  subject  to  state  taxes,  it  does  not
demonstrate  sufficient  state  control  over  that  property  to
warrant  a  finding  that  community  service  boards  are  "arms  of  the
state."   At  best,  this  fact  does  not  tilt  the  balance  either
way.   *See Peery*,  2009  WL  1228446,  *6  n.11  (dismissing  an
assertion  that  each  community  service  board's  property  is  public
property  as  too  vague  to  show  control).

O.C.G.A.  §  37-1-40  likewise  does  not  help  Advantage's
cause.   That  provision  requires  the  Department  of  Behavioral
Health  and  Developmental  Disabilities  to  "adopt  and  promulgate
written  rules,  regulations,  and  standards . . . which  shall  be
the  basis  of  state  financial  participation  in  mental  health,

developmental disabilities, and addictive diseases programs." In light of Advantage's autonomy over the function at issue in this case, compliance with state regulation to receive state funds is insufficient to show that the state controls Advantage as an "arm of the state." *See Lightfoot*, 771 F.3d at 773-74 (concluding that state regulation to receive funding was insufficient to show the requisite control for Eleventh Amendment immunity when the school districts at issue retained substantial autonomy).

Advantage also points to *Youngblood*'s citation of O.C.G.A. § 37-2-6(h) as evidence of control. This provision states, however, that the governing board of each community service board must adopt bylaws and operational policies and guidelines to address board appointment procedures, terms, and other statutory requirements. O.C.G.A. § 37-2-6(h). The fact that the state determines the process for appointing the governing board is insufficient state control for this factor to favor Eleventh Amendment immunity. *See Lightfoot*, 771 F.3d at 772 (finding that the fact that the state established the qualifications for school board members, the manner in which they are elected, their terms of office, and the procedures for their meetings was insufficient to show state control of the school districts).

Finally, Advantage cites O.C.G.A. § 37-2-10 as evidence of state control.   This provision permits the state to assume responsibility for the community service board's operations upon notification of the board's inability to provide adequate services.   Other courts have relied on this provision to support a finding that the state maintains some control over community service boards.   *See Peery*, 2009 WL 1228446, at *6-*7 (determining that the control factor was "at best a wash").   The Eleventh Circuit has held, however, that similar emergency state removal provisions are insufficient to show the requisite state control for Eleventh Amendment immunity.   *See Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1306-1310 (11th Cir. 2005) (holding that the Florida sheriff was not controlled by the state when enforcing a county ordinance even though the Governor retained authority to remove or enlist the sheriff under extraordinary circumstances); *see also Lightfoot*, 771 F.3d at 772 (finding that the school district failed to establish the "requisite control for Eleventh Amendment purposes" even though the Governor had authority to suspend school board members if a school became at risk of losing its accreditation).

Additionally, no evidence exists in the present record that Advantage was facing a crisis or that the state had taken over operations of Advantage at the time of Miller's termination.

The mere possibility of a state takeover has no bearing on whether the state had meaningful control over Advantage's decision to terminate Miller.  Advantage has failed to point to any evidence that Miller's termination was subject to state control.  Instead, the record indicates that community service boards function primarily independently and under the authority of their governing boards.  Accordingly, the Court finds that the control factor weighs against granting Advantage Eleventh Amendment immunity.

C. Source of Funding

Advantage argues that the source of its funding supports extending Eleventh Amendment immunity to it in this action.  In support of this argument, Advantage cites the deposition of Fred Eckhardt for the proposition that it receives most of its funding from the state.  But that testimony does not quite support the proposition for which it is cited.

In response to a question asking about Advantage's "external funders," Eckhardt replies, "Primarily—well, the state though their fee for service and grant. . . . Medicaid, Medicare, commercial insurance."  Eckhardt Dep. 39:5-8, ECF No. 27.[5]  This testimony is ambiguous as to whether the word

---

[5] Eckhardt also states that the state grant-in-aid method was the "primary funding source for community mental health in Georgia" until the state switched to the fee-for-service system under which it now operates.  *Id*. at 40:14-21.  This statement is irrelevant because the

"primarily" refers to the state funding or to all of the funding methods that Eckhardt lists.  Even assuming that Eckhardt meant Advantage receives "primarily" state funding alone, this statement is too vague and subjective to determine that this factor weighs in favor of granting Eleventh Amendment immunity.[6] Thus, the Court concludes that Advantage has failed to show that it receives most of its funding from the state.  Consequently, the third factor weighs against granting Eleventh Amendment immunity.  The Court hastens to add that even if Advantage had established that most of its funding came from the state, this would not have been sufficient, in light of the other factors, to tilt the balance in favor of a conclusion that Advantage is an "arm of the state" for Eleventh Amendment immunity purposes.

> ### D.   Liability for Judgments

The state is not directly liable for judgments against Advantage.  O.C.G.A. §§ 37-2-6(a); 37-2-11.1(c)(1).  Thus, this factor weighs strongly against granting Eleventh Amendment

---

grant-in-aid method was being phased out during Miller's employment. *Id*. at 41:23-42:6.

[6] Advantage is in the best position to offer evidence of its funding percentages.  Advantage in fact attached two exhibits to its supplemental brief in support of the present motion.  Instead of submitting an affidavit stating the percentages of funding Advantage receives from each source, however, Advantage relies on the facts from previous cases involving other community service boards to establish that it receives most of its funding from the state.  The Court cannot make a factual determination about Advantage's funding based on the funding of different community service boards in previous cases.  This is particularly true when, as here, the state funding model for community service boards recently changed.

immunity.  *Adusaid*, 405 F.3d at 1313 ("[T]he fact that the state is not liable . . . weighs heavily against extending the state's Eleventh Amendment immunity to the challenged conduct . . . .").

Nevertheless, Advantage argues that a judgment against it would be costly for the state because Advantage relies heavily on state funds to support its operations.  But Advantage does not point to any evidence to support this assertion.  The Court cannot speculate about how a judgment against Advantage may affect the state.  Instead of explaining how a judgment against Advantage might affect the state, Advantage cites *Manders* and *Lesinski* for support.  Both cases are distinguishable.[7]

In *Manders*, the three Eleventh Amendment factors besides liability weighed in favor of granting immunity.  *Manders*, 338 F.3d at 1328.  Thus, the Eleventh Circuit concluded that the fact that the state was not liable for judgments against the sheriff "d[id] not defeat [the sheriff's] immunity claim."  *See id.* at 1328.  Here, contrary to *Manders*, the first factor is

---

[7] Advantage also argues that the state is implicated by a judgment against it because Advantage is insured by the Georgia Department of Administrative Services.  Def.'s Br. in Supp. of Mot. to Dismiss 9, ECF No. 34-1; *see also* Pl.'s Mot. in Limine Ex. A, Def.'s Initial Disclosure III, ECF No. 42-1 (indicating that Advantage maintains insurance).  It appears, however, that Advantage pays premiums to the Department to maintain this insurance.  *See* O.C.G.A § 45-9-1(c)(providing for the streamlining of community service board premium payments).  Thus, this insurance relationship does not establish that the state's treasury is directly liable for a judgment against Advantage.  To the contrary, it shows that Advantage purchases insurance to cover its liabilities.

inconclusive and the other two factors weigh against granting immunity.

Lesinski is also distinguishable. In Lesinski, Florida created water management districts to comply with its obligation under the Florida Constitution to "conserve and protect [the State's] natural resources and scenic beauty." Lesinski, 739 F.3d at 605 (alteration in original)(quoting Fla. Const. art. II, § 7(a)). The Lesinski court reasoned that, if a water management district accrued a substantial judgment, the state of Florida would have to either pay the judgment for the district or "shirk[] its constitutionally mandated duty." Id. Thus, the court concluded that Florida's treasury was directly implicated by a judgment against the water management district. Id.

Here, Georgia did not create community service boards to fulfill a specific constitutional obligation. Thus, Georgia will not have to choose between paying a judgment for Advantage and "shirking its constitutionally mandated duty." Additionally, community service boards' flexible contractual relationship with the state suggests that Georgia would not have to choose between paying a judgment for Advantage and providing mental health services to its citizens either. It appears that if a community service board was unable to survive a judgment against it, the state could contract with a new board to take its place. Advantage has presented no evidence or argument to the contrary.

Thus, the Court cannot conclude that Advantage has established that Georgia's treasury would be directly implicated by a judgment against Advantage.  Accordingly, the Court finds that the fourth factor weighs against granting Eleventh Amendment immunity.

### CONCLUSION

Balancing the *Manders* factors, the Court finds that Advantage is not an "arm of the state" for Eleventh Amendment purposes.  Therefore, it is not entitled to immunity and is subject to the jurisdiction of this Court.  Accordingly, its motion to dismiss (ECF No. 34) is denied.

IT IS SO ORDERED, this 10th day of November, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA